UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    TOP SHELV WORLDWIDE, LLC,　　　　　　　　Case No. 17-21434-dob
        Debtor.　　　　　　　　　　　　　　　　　　　Chapter 11 Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Daniel S. Opperman
_____/

TOP SHELV WORLDWIDE, LLC,
    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
　　　　　　　　　　　　　　　　　　　　　　　　Case No. 18-2005-dob

FOUR COURTS, INC., an Ontario Corporation,
FARLEY MANUFACTURING, INC., an Ontario
Corporation, ANTHONY GUSHOW & SONS, INC.,
SUGAR CONSTRUCTION, INC., DEWITT LUMBER
COMPANY, UNITED RENTALS, INC., NORTHERN
CONCRETE PIPE, INC., SEQUIN LUMBER COMPANY, INC.,
VALLEY ELECTRICAL CONTRACTORS, INC.,
and ROBERT ANDERSON and NANCY ANDERSON,
    Defendants.
_____/

OPINION GRANTING ANTHONY GUSHOW & SONS, INC.'S
MOTION FOR SUMMARY JUDGMENT

       A Defendant, Anthony Gushow & Sons, Inc. ("Gushow") filed a Motion for Summary Judgment claiming that the issues of the validity and priority of liens raised by the Plaintiff, Top Shelv Worldwide, LLC ("Top Shelv") in this adversary proceeding have already been determined by this Court in a May 6, 2016 Order Confirming Debtor's First Amended Combined Plan of Reorganization and Disclosure Statement. Top Shelv disagrees and argues that the doctrine of res judicata does not apply. Because the Court concludes that certain issues of validity and priority of claims were previously determined by this Court, Gushow's Motion for Summary Judgment is granted.

1

Findings of Fact

Top Shelv filed a previous Chapter 11 petition on August 31, 2015 and its First Amended Combined Plan of Reorganization and Disclosure Statement ("2016 Plan") was confirmed by stipulation on May 6, 2016. Gushow is described in paragraph 3.2 of the 2016 Plan as a Class 2 Secured Claim in the amount of $496,382.32. This particular paragraph reads:

> 3.2 **Class 2: Secured Claim of Anthony Gushow & Sons, Inc.**
>
> A. Class 2 consists of the Secured Claim of Anthony Gushow & Sons, Inc. ("Gushow"). The Secured Claim of Gushow is secured by the Debtor's Realty pursuant to a prepetition construction lien. **Class 2 is impaired and entitled to vote**.
>
> B. Gushow shall be paid 100% of its Secured Claim in Cash in a maximum of one hundred nineteen (119) monthly installments and one final balloon payment, only to the extent such Claim is allowed. The balloon payment, if necessary, shall be due and payable on the first day of the month following payment of the final monthly installment payment. The amount of each monthly installment shall be equal to Gushow's Pro Rata share of the Creditor Fund. The Allowed Secured Claim of Gushow shall accrue interest at two percent (2.00%). The first monthly installment payment shall be paid on the later of (i) the first day of the month following the Effective Date, or (ii) first day of the month following the date that the Class 2 Claim is Allowed, and subsequent monthly installment payments to be paid on the first day of each month thereafter, from the Capital Contributions and/or the Reorganized Debtor's operations. Until the Allowed Secured Claim of Gushow has been fully and indefeasibly paid, Gushow shall retain any and all Liens that it may have against the Debtor's assets, which shall remain in full force and effect, with the same priority and to the same extent as on the Petition Date. Gushow shall release and extinguish all Liens and execute any and all documents requested by the Debtor to memorialize same, upon payment in full of its Allowed Secured Claim. Based upon a review of the filed schedules and filed proofs of claims, the amount of the Class 2 Secured Claim and payments for the first two years of the Plan are as follows:

| Class 2 Claim | Est. Total 12 Months Payments | Est. Total 24 Months Payments | Est. Pro Rata % |
|---|---|---|---|
| $496,382.32 | $15,295.00 | $59,925.00 | 16.100% |

Although the amounts vary from each Defendant, other Defendants are similarly described in the 2016 Plan.

Article 7 of the 2016 Plan detailed a procedure for objecting to claims and the setting of

rights among the creditors and Top Shelv. Paragraphs 7.1 and 7.4 are relevant to this matter.

> **7.1 Objections and Bar Date for Filing Objections.** As soon as practicable, but in no event later than the Claim Objection Deadline (as to objections to Claims other than Administrative Claims), and the Administrative Claim Objection Deadline (as to objections to Administrative Claims), objections to Claims will be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.
>
> . . .
>
> **7.4 Objections to Claims of Secured Creditors; Reservation of Rights.** The Debtor will not object to the Claims of the Secured Creditors, or challenge the validity and priority of Secured Creditor Claims and Liens as long as the Secured Creditors have voted to accept this Plan and as long thereafter as the Secured Creditors have not exercised their various default remedies. The rights of all Secured Creditors as to the amount, validity, priority and perfection of their Liens are preserved as well as their rights to challenge the amount, validity, priority and perfection of any lien or claim of any Secured Creditor. The Secured Creditors shall not challenge the claim, lien or the validity, priority or perfection of any other Secured Creditor as long as the Debtor has confirmed this Plan and the Reorganized Debtor has not defaulted under the terms of such Plan which has not been waived or remains uncured past any applicable cure period. Nothing contained herein shall prevent Secured Creditor, Four Courts, from amending its state court pleadings and nothing herein shall be deemed or constitute a consent to such amendments.

Top Shelv did not file an objection to Gushow's claim.

While all hoped Top Shelv would succeed, specific remedies were given all secured creditors, such as Gushow:

> **14.2 Special Default Remedies of Secured Creditors.** In the event of a default under the Plan, the Secured Creditors or any one of them, may file with the Bankruptcy Court, if the Chapter 11 Case is open or serve upon Debtor's counsel and the other Secured Creditors if the Chapter 11 Case is closed, a Notice of Default specifically identifying the basis for the default. In the event that one or more of the Secured Creditors files a Notice of Default with the Bankruptcy Court, if the Chapter 11 Case is open, or the date the Notice of Default is served upon counsel for the Debtor, if the Chapter 11 Case is closed, the Debtor may cure the stated default(s) within the periods stated herein, as applicable, for the specified default: (a) seven (7) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor for a default related to failure to pay utilities or insurance, but no later than the date designated in a shut-off notice with regard to utilities or lapse of coverage for any insurance; (b) fourteen (14) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor for a default related to failure to pay a payment due to a Secured Creditor;

(c) thirty (30) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor if the default relates to non-payment of personal or real property taxes or any other default under the confirmed Plan; and (d) seven (7) days from the date of the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor related to a failure to timely provide: monthly balance sheets and income statements, invoices etc., or proof of payments. In the event that a default is non-monetary in nature, and the Debtor has in good faith commenced cure within such thirty-day (30) period, but because of the nature of the default such default cannot be cured in such thirty-day (30) period, then the Debtor shall have an additional seven (7) days to cure such default as long as the Debtor diligently and in good faith pursues the cure of such default. In the event a default remains uncured upon the expiration of the stated cure period the Secured Creditors or any one of them may immediately take steps to challenge the amount, validity, priority and perfection of any lien or claim of any other Secured Creditor pursuant to Michigan law in the Michigan state courts and pursue its remedies against the Debtor and Debtor waives all defenses to any such remedies pursued. In the event that there is a default in any of the terms of this section 14.2 which remains uncured past the applicable cure period, the Secured Creditors, or any one of them, may file with the Bankruptcy Court, if the Bankruptcy Case is open, or serve upon counsel for the Debtor, if the Chapter 11 Case is closed, a Notice of Failure to Cure Default with notice to the other Secured Creditors and a Consultant or some other person, appointed by a majority in interest of the Secured Creditors, shall be installed as Receiver of all of the assets and businesses of the Debtor and the Debtor shall fully cooperate with the Receiver by immediately turning over to the Receiver possession and control of all business operations and assets. In the event Debtor fails to immediately turnover to the Consultant or Receiver all business assets and operations, the Secured Creditors, or any one of them, may present on an emergency basis to a state court or Bankruptcy Court notice of Debtor's failure to comply and the state court or Bankruptcy Court shall immediately enter an order upon presentment requiring that all business assets and operations of the Debtor be turned over to the Consultant or Receiver. A Secured Creditor that files or serves a Notice of Default shall also simultaneously serve the Notice of Default upon counsel for the other Secured Creditors.

Top Shelv did not perform as hoped and filed a second Chapter 11 petition with this Court on July 14, 2017, prompted by a notice of default sent by Defendants, Four Courts, Inc. and Farley Manufacturing, Inc., which would initiate the special default remedies. Top Shelv filed the instant adversary proceeding on January 28, 2018, as last amended on April 18, 2018. As part of this adversary proceeding, Top Shelv seeks to invalidate the construction lien of Gushow. Top Shelv asserts that all work was completed by Gushow by November 8, 2014, and because the construction lien was recorded by Gushow greater than 90 days after the applicable statutory period on February

18, 2015, such is invalid. Top Shelv supports this allegation with the affidavit of Stan Dulaney and copies of invoices.

Gushow filed the instant Motion for Summary Judgment, asserting as its primary argument that the 2016 Plan should have res judicata effect in this case. Specifically, Gushow argues that Top Shelv agreed that Gushow had a valid secured construction lien per the 2016 Plan. Under principles of res judicata and relevant case law, the 2016 Plan is a final judgment, involving the same parties as in the current Chapter 11 case, involving the same issue–the secured status of Gushow's claim–which was or could have been actually litigated with an identity of the two actions involving the same facts and evidence necessary as to the finding of a valid lien.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) (determinations of the validity, extent, or priority of liens).

## Law

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the

nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

Res Judicata

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City School District*, 465 U.S. 75 (1984)).

> "Res judicata" has both a general and a specific meaning. In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and "collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which is being discussed. . . . For clarity we prefer the more specific term, "collateral estoppel."

*Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

An order confirming a Chapter 11 plan is res judicata as to "any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991); *see also Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 864-65 (E.D. Mich. 2005).

In the case of *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474 (6th Cir. 1992), the Sixth Circuit Court of Appeals examined this issue and identified the four elements of res judicata as:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

> 4. An identity of the causes of action.

*Id*. at 480 (citations omitted). The *Sanders* Court first determined that confirmation of a plan of reorganization constitutes a final judgment, and second determined that the term "party" should be interpreted broadly to include creditors and equity security holders, including those in privy with those parties. Third, the *Sanders* Court found that the confirmed plan in that case barred both core and non-core subsequent proceedings and found the claims of the non-debtor parent corporation in that case should have been brought during the bankruptcy proceeding and were, therefore, barred by res judicata. Finally, the *Sanders* Court found the fourth element satisfied in that there existed identical claims as both had an "'identity of facts creating the right of action and of the evidence necessary to sustain each action.'" *Id*. at 484 (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).

<u>Analysis</u>

The Court concludes that Plaintiff Debtor's claim against Gushow to invalidate Gushow's construction lien is barred by res judicata. The Court analyzes this case under the *Sanders* factors, noting that the *Sanders* case involved facts not as straightforward as the instant case in that *Sanders* involved the parent of the debtor and creditors of the debtor, but this case involves the same Debtor and its creditors. First, it is undisputed that a Chapter 11 plan of reorganization is a final judgment, so the Order Confirming the 2016 Plan is a final judgment. Second, this second case involves the exact same parties–Top Shelv and Gushow, along with the other creditor Defendants. Third, the instant action involves the exact same issue as what was actually litigated and determined in the confirmed plan in the first case. Upon the stipulation of the parties, the Court confirmed the 2016 Plan which held that Gushow's claim was secured with its lien preserved. The facts that support Gushow's claim in 2016 are the same as the instant case and the defenses to that claim existed in 2016, but were not raised in the form of an objection. No new facts, defenses, or change in the law

exist in the instant case that did not exist in the prior case. Fourth, the claim of Gushow in the previous case and this case as between it and Top Shelv are identical. The facts and evidence in existence on the date of confirmation of the 2016 Plan remain unchanged.

Top Shelv argues that since serial Chapter 11 cases are allowed, a previous Chapter 11 plan cannot be given res judicata effect. While the straightforward logic of Top Shelv's argument is compelling, nuances of Chapter 11 dictate a rejection of Top Shelv's position. First, the change that brought Top Shelv back to this Court as a Chapter 11 Debtor is its lack of financial performance for reasons both within and beyond its control. Top Shelv requests a reset of its financial obligations, which it is entitled because of stiffer economic conditions which in turn impact the value of its main asset, the sports dome facility. Top Shelv on one hand and the secured creditors on the other hand now face an unhappy financial situation– the value of the sports dome facility is not sufficient to pay all secured creditors in full. It is this change–the economics of Top Shelv– that is the factor in this case that allows Top Shelv to have a second chance to reorganize. In the 2016 Plan, all parties agreed that the value of the sports dome facility was sufficient to pay all secured creditors. But that is not true today because the value of the facility has dropped. The issue of whether a particular creditor has a valid lien was decided in the 2016 Plan and cannot be revisited today because no fact has changed since the 2016 Plan as to these issues and the Debtor did not object to Gushow's claim.

The Debtor filed the instant case because economic and financial conditions changed and these conditions drive the issues in this case. Top Shelv's chances of successfully reorganizing its financial affairs are dependent on whether it can generate sufficient cash flow to pay its creditors, as well as address certain legal issues not addressed in the 2016 Plan such as the absolute priority rule and any Section 1111(b) election a creditor may make. But then again, Top Shelv's response to all of these issues is gauged by the financial ability of Top Shelv to show sufficient new value or cash flow and extended payment to any creditor who elects 1111(b) status. For Top Shelv, as with

any other serial Chapter 11 debtor, these issues are the ones that must be handled in a Chapter 11 plan.[1]

## Conclusion

Res judicata applies in this case and Gushow's Motion for Summary Judgment is granted. Since this ruling may affect other Defendants and the Plaintiff's request to amend its Complaint, the Court will schedule a telephonic status conference to address how the parties wish to proceed.

Counsel for Gushow is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on May 01, 2018**

/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**

---

[1] The Court considered but rejected the argument that the language of Paragraph 7.4 reserves the right of the Debtor to challenge the validity and priority of Gushow's secured claim because another secured creditor had not exercised its default remedies. First, Gushow did not initiate a step to exercise a right of default, Four Courts and Farley did. Second, no Defendant completed any default or special default right. Third, Paragraph 14.2 allows other secured creditors the right to challenge the validity, priority and perfection of another secured creditor, but not Top Shelv. Instead, the rights of Top Shelv to do so are waived.