UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

| | |
|---|---|
| TOP SHELV WORLDWIDE, LLC,<br>  Debtor.<br>_____/ | Case No. 17-21434-dob<br>Chapter 11 Proceeding<br>Hon. Daniel S. Opperman |

TOP SHELV WORLDWIDE, LLC,

  Plaintiff,

v.                       Adversary Proceeding
                       Case No. 18-2005-dob

FOUR COURTS, INC., an Ontario Corporation,
FARLEY MANUFACTURING, INC., an Ontario
Corporation, ANTHONY GUSHOW & SONS, INC.,
SUGAR CONSTRUCTION, INC., DEWITT LUMBER
COMPANY, UNITED RENTALS, INC., NORTHERN
CONCRETE PIPE, INC., SEQUIN LUMBER COMPANY, INC.,
VALLEY ELECTRICAL CONTRACTORS, INC.,
and ROBERT ANDERSON AND NANCY ANDERSON,

  Defendants.
_____/

## OPINION DENYING DEFENDANTS FOUR COURTS, INC. AND FARLEY MANUFACTURING, INC.'S MOTION FOR SUMMARY JUDGMENT

### Introduction

  Defendants Four Courts, Inc. and Farley Manufacturing, Inc. (referred to collectively as "Defendants") request summary judgment as to all counts pertaining to them in this adversary proceeding brought by Plaintiff Top Shelv Worldwide, LLC ("Top Shelv"). Top Shelv's amended complaint seeks to declare the construction lien of Farley Manufacturing invalid, objects to the amended claim of Four Courts, and seeks a determination of the priority of the various mortgages and liens in this case. Top Shelv, along with Defendant Anthony Gushow &

1

Sons, Inc. ("Gushow") and Defendant Sugar Construction, Inc., respond to the motion objecting to it on various grounds. Because the Court concludes that there are genuine issues of material fact, the Motion for Summary Judgment is denied for the reasons stated in this Opinion.

Facts

A.    <u>Pre-July 2017 Events</u>

Top Shelv contracted with Defendants to supply the materials for and supervise the installation of a sports dome on a property owned by Top Shelv in Auburn, Michigan. Top Shelv filed its first Chapter 11 petition on August 31, 2015. In that case, "The Farley Group/Four Courts" filed an amended claim in the amount of $1,501,756.60 and stated that the basis for perfection of the claim was "Mortgage and UCC/Security Agreement." Top Shelv's First Amended Combined Plan of Reorganization and Disclosure Statement ("2016 Plan") was confirmed by stipulation on May 6, 2016. In the 2016 Plan, Four Courts is listed as a secured claimant and the nature of its liens is described as "Construction, UCC, Mortgage." Four Courts' claim is also described in paragraph 3.3 of the 2016 Plan as a Class 3 Secured Claim in the amount of $1,435,220.93. That paragraph read as follows:

> 3.3    **Class 3: Secured Claim of Four Courts Inc.**
>
> A.    Class 3 consists of the Secured Claim of Four Courts, Inc. ("Four Courts"). The Secured Claim of Four Courts is secured by the Debtor's assets pursuant to a prepetition security agreement, mortgage, and construction lien. **Class 3 is impaired and entitled to vote.**
>
> B.    Four Courts Four Courts shall be paid 100% of its Secured Claim in Cash in a maximum of one hundred nineteen (119) monthly installments and one final balloon payment, only to the extent such Claim is Allowed. The balloon payment, if necessary, shall be due and payable on the first day of the month following payment of the final monthly installment payment. The amount of each monthly installment shall be equal to Four Courts' Pro Rata share of the Creditor Fund. The Allowed Secured Claim of Four Courts shall accrue interest at two percent (2.00%). The first monthly installment

payment shall be paid on the later of (i) the first day of the month following the Effective Date, or (ii) first day of the month following the date that the Class 3 Claim is Allowed, and subsequent monthly installment payments to be paid on the first day of each month thereafter, from the Capital Contributions and/or the Reorganized Debtor's operations. Until the Allowed Secured Claim of Four Courts has been fully and indefeasibly paid, Four Courts shall retain any and all Liens that it may have against the Debtor's assets, which shall remain in full force and effect, with the same priority and to the same extent as on the Petition Date. Four Courts shall release and extinguish all Liens and execute any and all documents requested by the Debtor to memorialize same, upon payment in full of its Allowed Secured Claim. Based upon a review of the filed schedules and filed proofs of claims, the amount of the Class 3 Secured Claim and payments for the first two years of the Plan are as follows:

| **Class 3 Claim** | **Est. Total 12 Months Payments** | **Est. Total 24 Months Payments** | **Est. Pro Rata %** |
|---|---|---|---|
| $1,435,220.93 | $44,222.00 | $173,265.00 | 46.550% |

Although the amounts vary for each Defendant, other Defendants are similarly described in the 2016 Plan.

Article 7 of the 2016 Plan detailed a procedure for objecting to claims and the setting of rights among the creditors and Top Shelv. Paragraphs 7.1 and 7.4 are relevant to this matter.

> **7.1 Objections and Bar Date for Filing Objections.** As soon as practicable, but in no event later than the Claim Objection Deadline (as to objections to Claims other than Administrative Claims), and the Administrative Claim Objection Deadline (as to objections to Administrative Claims), objections to Claims will be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.
>
> . . .
>
> **7.4 Objections to Claims of Secured Creditors; Reservation of Rights.** The Debtor will not object to the Claims of the Secured Creditors, or challenge the validity and priority of Secured Creditor Claims and Liens as long as the Secured Creditors have voted to accept this Plan and as long thereafter as the Secured Creditors have not exercised their various default remedies. The rights of all Secured Creditors as to the amount, validity, priority and perfection of their Liens are preserved as well as their rights to challenge the amount, validity, priority and

perfection of any lien or claim of any Secured Creditor. The Secured Creditors shall not challenge the claim, lien or the validity, priority or perfection of any other Secured Creditor as long as the Debtor has confirmed this Plan and the Reorganized Debtor has not defaulted under the terms of such Plan which has not been waived or remains uncured past any applicable cure period. Nothing contained herein shall prevent Secured Creditor, Four Courts, from amending its state court pleadings and nothing herein shall be deemed or constitute a consent to such amendments.

Top Shelv did not file an objection to Four Courts' claim.

The 2016 Plan also gave specific remedies to all secured creditors, such as Four Courts:

**14.2 Special Default Remedies of Secured Creditors.** In the event of a default under the Plan, the Secured Creditors or any one of them, may file with the Bankruptcy Court, if the Chapter 11 Case is open or serve upon Debtor's counsel and the other Secured Creditors if the Chapter 11 Case is closed, a Notice of Default specifically identifying the basis for the default. In the event that one or more of the Secured Creditors files a Notice of Default with the Bankruptcy Court, if the Chapter 11 Case is open, or the date the Notice of Default is served upon counsel for the Debtor, if the Chapter 11 Case is closed, the Debtor may cure the stated default(s) within the periods stated herein, as applicable, for the specified default: (a) seven (7) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor for a default related to failure to pay utilities or insurance, but no later than the date designated in a shut-off notice with regard to utilities or lapse of coverage for any insurance; (b) fourteen (14) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor for a default related to failure to pay a payment due to a Secured Creditor; (c) thirty (30) days from the date the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor if the default relates to non-payment of personal or real property taxes or any other default under the confirmed Plan; and (d) seven (7) days from the date of the Notice of Default is filed with the Bankruptcy Court or served upon counsel for the Debtor related to a failure to timely provide: monthly balance sheets and income statements, invoices etc., or proof of payments. In the event that a default is non-monetary in nature, and the Debtor has in good faith commenced cure within such thirty-day (30) period, but because of the nature of the default such default cannot be cured in such thirty-day (30) period, then the Debtor shall have an additional seven (7) days to cure such default as long as the Debtor diligently and in good faith pursues the cure of such default. In the event a default remains uncured upon the expiration of the stated cure period the Secured Creditors or any one of them may immediately take steps to challenge the amount, validity, priority and perfection of any lien or claim of any other Secured Creditor pursuant to Michigan law in the Michigan state courts and pursue its remedies against the Debtor and Debtor waives all defenses to any such remedies pursued. In the event that there is a default in any of the terms of this section 14.2 which remains uncured past the

4

applicable cure period, the Secured Creditors, or any one of them, may file with the Bankruptcy Court, if the Bankruptcy Case is open, or serve upon counsel for the Debtor, if the Chapter 11 Case is closed, a Notice of Failure to Cure Default with notice to the other Secured Creditors and a Consultant or some other person, appointed by a majority in interest of the Secured Creditors, shall be installed as Receiver of all of the assets and businesses of the Debtor and the Debtor shall fully cooperate with the Receiver by immediately turning over to the Receiver possession and control of all business operations and assets. In the event Debtor fails to immediately turnover to the Consultant or Receiver all business assets and operations, the Secured Creditors, or any one of them, may present on an emergency basis to a state court or Bankruptcy Court notice of Debtor's failure to comply and the state court or Bankruptcy Court shall immediately enter an order upon presentment requiring that all business assets and operations of the Debtor be turned over to the Consultant or Receiver. A Secured Creditor that files or serves a Notice of Default shall also simultaneously serve the Notice of Default upon counsel for the other Secured Creditors.

  B. <u>The Second Chapter 11 Case of Top Shelv</u>

Top Shelv did not perform as hoped and filed a second Chapter 11 petition with this Court on July 14, 2017, prompted by a notice of default sent by Defendants and Farley Manufacturing, which would initiate the special default remedies. In this second case, "The Farley Group/Four Courts" filed a claim last amended on February 19, 2018, in the amount of $1,779,805.43 and listed as the basis for perfection "Mortgage/UCC/Notes/Construction Lien/Claim Assignment." In the summary and breakdown of claims, the "Statement of Claim August 31, 2015" is listed in the amount of $1,435,200.60 and includes an asterisk with the following note: "The amount of the Farley Manufacturing, Inc. Construction lien claim is also included in the Four Courts, Inc. security agreement and mortgage." There is also a note that "Farley Manufacturing, Inc. and Four Courts, Inc. have common ownership and refer to themselves as The Farley Group."

Top Shelv filed the instant adversary proceeding on January 28, 2018. As part of this adversary proceeding, Top Shelv sought a determination that the construction liens of Defendants Farley Manufacturing and Gushow are invalid. Top Shelv also objected to the claims of a number of Defendants and sought a determination regarding the priority of the various liens.

Defendants and Gushow filed motions for summary judgment. In an Opinion entered by the Court on May 1, 2018, the Court held that Gushow was entitled to summary judgment because Top Shelv's claim against Gushow to invalidate its construction lien is barred by res judicata. *See Top Shelv Worldwide, LLC v. Four Courts, Inc. (In re Top Shelv Worldwide, LLC)*, No. 17-21434-dob, 2018 Bankr. LEXIS 1301, at *2 (Bankr. E.D. Mich. May 1, 2018). More specifically, the Court held that the Order Confirming the 2016 Plan is a final judgment, the second Chapter 11 case involves the same parties as the first case, the second case involves the same issue as to Gushow as what was actually litigated in the first case, and the claims of Gushow in both cases are identical. *See id.* at *13-14.

Top Shelv filed its amended complaint on May 18, 2018. In Count I of the complaint, Top Shelv seeks to invalidate the construction lien of Farley Manufacturing. First, Top Shelv argues that Four Courts cannot claim the benefit of the construction lien filed by another entity─Farley Manufacturing. Second, Top Shelv asserts that the construction lien was filed late. Top Shelv alleges that the work was completed prior to the opening of the facility on November 8, 2014, and that even if the work was completed on June 22, 2015, as Defendants allege, the lien was still untimely because it was filed one day after the 90 day applicable statutory period had passed.

6

In Count II of the amended complaint, Top Shelv objects to the amended claim of Four Courts. More specifically, it objects to Four Courts adding the claim of ShindelRock without filing a transfer of claim, along with its attempt to claim the construction lien of Farley Manufacturing. Finally, in Count VII, Top Shelv seeks a determination that all valid construction liens are to be paid ahead of Four Courts' mortgage and UCC claims based upon a state court order entered by the Bay County Circuit Court granting co-Defendant Sugar Construction's motion for partial summary disposition as to lien priority.

C. <u>Arguments of the Parties</u>

Defendants filed a new Motion for Summary Judgment on June 1, 2018. They first argue that Four Courts and Farley Manufacturing are related companies with common ownership and are referred to as The Farley Group. Defendants note that they amended their claim numerous times to clarify the relationship between the two entities. They also argue that the construction lien was timely filed and dispute the last day work was completed. More importantly, Defendants make two additional arguments seemingly for the first time. First, they argue that the 2016 Plan, in which Top Shelv agreed that Four Courts had a valid construction lien, should have res judicata effect in this case as to the validity of the construction lien. Second, they argue that the construction liens and mortgage claims should only attach to the land and any structures other than the dome, while Four Courts' UCC fixture claim should attach to the dome structure components. They argue that the state court order issued by the Bay County Circuit Court, granting partial summary disposition pursuant to a motion filed by co-Defendant Sugar Construction, should not be given preclusive effect by this Court because it is not a final

judgment.[1]  They further argue that the fixture filing was recorded prior to the construction liens being recorded, which perfected the security interest in the dome.

Top Shelv makes a number of arguments in response.  As to the res judicata defense, it argues that the terms of the plan preserved its right to object to the secured creditors claim in Paragraph 7.4.  It attempts to distinguish Defendants from Gushow because Defendants served a notice of default on Top Shelv while Gushow did not.  Top Shelv also argues that Defendants have waived the defense of res judicata by 1) not including it in their first motion for summary judgment, and 2) by attempting to relitigate the priority of the liens based on the UCC fixture filing.  Top Shelv argues that Farley Manufacturing was not a party in the prior bankruptcy case and that Four Courts never asserted that it was claiming the benefit of Farley Manufacturing's construction lien.  Top Shelv asserts that Farley Manufacturing filed its own foreclosure proceedings in state court even though Four Courts was a party to the state court litigation initiated by Sugar Construction and actually named Four Courts as a defendant as further support for its argument that they are two separate entities.

In response to the Motion for Summary Judgment, Sugar Construction argues that the state court was correct in finding that the construction liens had priority over the other interests in the property, and that even if this Court finds that Four Courts' security interest remains in the dome, the construction liens have priority over Four Courts' security interest.

---

[1] Defendants assert that Four Courts filed a motion on July 1, 2015, seeking reconsideration of the state court's May 29, 2015, order granting partial summary disposition.  The court entered an order requiring Sugar Construction to file a response to the motion by August 24, 2015.  On August 31, 2015, Top Shelv filed its first Chapter 11 case and the state court matter was stayed due to the bankruptcy filing.

Gushow argues that the construction liens share equal priority and have priority over the interests of Four Courts, agreeing with the arguments made in this regard by co-Defendant Sugar Construction. Gushow also argues that there are material issues of fact as to whether and to what extent Farley Manufacturing holds a construction lien. It points to the fact that Four Courts' claim in the 2015 bankruptcy did not list the construction lien as a basis for perfection but did in the 2017 bankruptcy. Gushow also notes that the claim of lien was attached to Four Courts' claim for the first time in the 2017 proceeding.

The Court heard oral arguments regarding Defendants' Motion for Summary Judgment on June 28, 2018, and took this matter under advisement.

<u>Jurisdiction</u>

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) because the issues relate to determinations of the validity, extent, or priority of liens.

<u>Applicable Law</u>

A. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(a) provides that summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden "of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "A 'genuine' issue is one where

no reasonable fact finder could return a judgment in favor of the non-moving party." *Chudzinski v. Hanif* (*In re Hanif*), 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) (quoting *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998)).

The burden shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted.'" *Hanif*, 530 B.R. at 663 (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

B. <u>Res Judicata</u>

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

> "Res judicata" has both a general and a specific meaning. In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and "collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which is being discussed. . . . For clarity we prefer the more specific term, "collateral estoppel."

*Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

An order confirming a Chapter 11 plan is res judicata as to "any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re*

*Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991); *see also Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 864-65 (E.D. Mich. 2005).

In the case of *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir. 1992), the Sixth Circuit Court of Appeals examined this issue and identified the four elements of res judicata as:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action.

*Id*. at 480 (citations omitted). The *Sanders* Court first determined that confirmation of a plan of reorganization constitutes a final judgment, and second determined that the term "party" should be interpreted broadly to include creditors and equity security holders, including those in privity with those parties. Third, the *Sanders* Court found that the confirmed plan in that case barred both core and non-core subsequent proceedings and found the claims of the non-debtor parent corporation in that case should have been brought during the bankruptcy proceeding and were, therefore, barred by res judicata. Finally, the *Sanders* Court found the fourth element satisfied in that there existed identical claims as both had an "'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Id*. at 484 (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).

C. <u>Collateral Estoppel</u>

While collateral estoppel is applicable in bankruptcy proceedings, *see Grogan v. Garner*, 498 U.S. 279, 284 (1991), a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment, *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Under Michigan law, "[c]ollateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated and 2) necessarily determined." *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). "An issue is 'actually litigated' if it 'is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact.'" *Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 863 (Bankr. E.D. Mich. 1997) (quoting *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986)). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 452 N.W.2d. at 631.

A trial is not necessarily required for an issue to be "actually litigated." *Latimer*, 386 N.W.2d at 627. "Michigan law clearly dictates that summary disposition in the state court is a valid and final judgment." *Thomas v. Ware (In re Thomas)*, 366 B.R. 727, 729-30 (E.D. Mich. 2007) (citing *Allied Elec. Supply Co. v. Tenaglia*, 602 N.W.2d 572, 573 (Mich. 1999)); *see also City of Detroit v. Qualls*, 454 N.W.2d 374, 382 n.27 (Mich. 1990) ("A judgment is considered a determination of the merits, and thereby triggers the doctrine of collateral estoppel on relitigation, even if the action has been resolved by a summary disposition[.]").

Analysis

The Court first considers the argument that res judicata bars Top Shelv's claim to invalidate Farley Manufacturing's construction lien as it did with regard to co-Defendant Gushow's construction lien. *See Top Shelv Worldwide*, 2018 Bankr. LEXIS 1301, at *2. Here, Defendants have similarly established the first factor as set forth by *Sanders*—a Chapter 11 plan of reorganization is a final judgment, so the Order confirming the 2016 Plan is a final judgment. The other three *Sanders* elements, however, are not as clear as to Defendants. With regard to the identity of the parties and the second action raising an issue that was actually litigated or should have been litigated in the first case, the Court notes that Four Courts included the construction lien claim of Farley Manufacturing for the first time along with its proof of claim in the second case.[2] This raises new issues regarding Four Courts' relationship to Farley Manufacturing, as well as the timeliness of the lien. While the Court acknowledges that that the 2016 Plan referenced a construction lien, the lien itself was not before the Court at the time; nor was it mentioned in the proof of claim filed by Four Courts in the first case. The presence of the construction lien in the second case also defeats the identity of the causes of action.

Moreover, Defendants bear the burden to prove that res judicata bars the second action, *see Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002), but they have made an argument that is irreconcilable with their res judicata argument. More specifically, Defendants assert that the construction liens and mortgage claims, including their own, only attach to the land and any structures other than the dome while the UCC fixture filing attaches to the dome structure components. Defendants argue that because the fixture filing was recorded first, it should be given priority over the construction liens. From a logical standpoint, however, if the Court were

---

[2] Ironically, Four Courts amended its proof of claim to include the construction lien claim *after* this adversary

13

to give the 2016 Plan preclusive effect with regard to the validity of the construction lien, it must also give it preclusive effect with regard to the priority of that lien.[3] In sum, while the Court may have initially been inclined to find that res judicata applies, Defendants have introduced new facts and evidence in the second case that were not before the Court in the first case. They also seek a determination regarding the priority of the liens that varies from the priority set forth in the 2016 Plan. Defendants' res judicata argument is, therefore, of no avail. Because there are genuine issues of material fact with regard to the timeliness and validity of the construction lien, the Court denies the Motion for Summary Judgment as to Counts I and II.

The Court now considers the issue of lien priority. Top Shelv's amended complaint seeks a determination that that the construction lien claimants are of equal priority ahead of Four Courts' mortgage and UCC filings based on an Order entered on a Motion for Partial Summary Disposition by the Bay County Circuit Court. A grant of partial summary disposition in Michigan, however, does not constitute a final judgment for collateral estoppel purposes until the entry of a final judgment. *Mullins v. City of Inkster*, No. 05-CV-73452, 2008 U.S. Dist. LEXIS 16044, at *31 (E.D. Mich. Mar. 3, 2008) (citing Mich. Ct. R. 2.604(A)). Here, a final judgment was not entered by the state court and thus the Bay County Circuit Court Order does not bar consideration of the issue of lien priority by the Court.

---

proceeding was filed.

[3] Further complicating matters is that the 2016 Plan stated that Four Courts' interest was predicated upon a mortgage, UCC agreement, *and* the construction lien. Four Courts has indicated that the amount included in the mortgage agreement is also covered by the construction lien. This is in contrast to the Gushow claim, which was based only upon its construction lien.

Defendants cite to several provisions of the UCC to argue that the fixture filing, which they assert attaches to the dome structure, should be given priority over the valid construction liens in this case. *See, e.g.*, Mich. Comp. Laws § 440.9334(5)(a) ("A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property" if the security interest is perfected "before the interest of the encumbrancer or owner is of record"). The UCC, however, specifically states that a security interest does not exist "in ordinary building materials incorporated into an improvement on land." Mich. Comp. Laws § 440.9334(1). The "Scope of Work/Contract" included along with Four Courts' proof of claim lists fabric membrane, doors, lighting, and mechanical equipment as some of the dome components. These items appear to be ordinary building materials. *See, e.g.*, *In re Lipke*, 124 B.R. 415, 416-18 (Bankr. D.R.I. 1991) (stating that the court would be "hard pressed to define" "lumber, sheet rock, electrical equipment, insulation, and roofing material" as anything other than "ordinary building materials"). Defendants argue, however, that the dome is movable and cite to the case of *Those Certain Interested Underwriters v. The Farley Grp.*, No. 1:13-CV-385, 2015 U.S. Dist. LEXIS 134148 (N.D.N.Y. Sept. 23, 2015), for that proposition. The court in that case found the dome to be movable and therefore a good while making a determination as to the applicable statute of limitations. *Id.* at *111. That case did not speak to the issue of whether the dome components were ordinary building materials incorporated into an improvement on land. The Court finds that Defendants have not satisfied their burden of proof in establishing that they have a security interest in the dome. Because the nature of the dome raises genuine issues of material fact, the Court denies the Motion for Summary Judgment as to Count VII.[4]

---

[4] Since the Court concludes that Defendants have not satisfied their burden of proof in establishing that the dome

## Conclusion

For the reasons discussed in this Opinion, the Court denies Defendants' Motion for Summary Judgment. The Court directs Top Shelv, as the prevailing party, to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on August 01, 2018**



/s/ Daniel S. Opperman
**Daniel S. Opperman
United States Bankruptcy Judge**

---

components are not ordinary building materials incorporated into an improvement on land, there is no need to address the argument advanced by co-Defendant Sugar Construction that even if Four Courts has a security interest in the dome, the construction liens still have priority over that interest.